## THE NORTHERN BANK OF KENTUCKY *v.* JAMES H. LEVERICH and another.

Where a bill had been lost, but the drawees promised the owner to pay the amount out of the proceeds of property expected to be received from the drawer, and sufficient property was afterwards received by them, the acceptance became absolute on the receipt of the property. The drawer could not countermand his order, after the acceptance, though before the delivery of the property, so as to discharge the acceptors, without the consent of the owner of the draft.

Where a lost bill was accepted verbally, with a knowledge of the fact of its loss, and the acceptors have treated with the plaintiffs as the holders, proof by a witness of the acknowledgment of the drawee that he had transferred the bill to the

plaintiffs, is sufficient evidence of their title. In such a case slight evidence of title should suffice. *Per Curiam :* The acknowledgment of the drawee is not hearsay, but rather the admission of a party to the bill. It would, perhaps, not be good evidence, because secondary, if the bill itself could have been produced. Where a bill of exchange has not been protested, interest is due only from judicial demand.

APPEAL from the District Court of the First District, *Buchanan,* J.

*R. H. Chinn,* for the plaintiffs. In the case of *Miln* v. *Prest,* 4 Campb. 393, it was decided, that where the language used on the presentation of a bill for acceptance could be considered as importing a promise to accept on the arrival of a certain cargo, on proof of the arrival of the cargo, the drawee would be bound. The only question in this case is, whether in a suit by the holders against the acceptors, proof of the acknowledgment by the endorser of the genuineness of his signature, can be excluded as hearsay. The court below correctly decided, that it could not be excluded on that ground.

*Lockett* and *Micou,* for the defendants. There is no evidence of the transfer to the plaintiffs of the bill sued on. The signature of *Vertner, the payee, must be proved,* before recovery can be had against the defendants. 2 Rob. 304. Bayley on Bills, (ed. 1836,) pp. 485 to 489.

The court should be strict in this case, as there is *no evidence* of the loss of the draft sued on, except the *statement* of Frey, that the plaintiffs *informed him,* Frey, as cashier of the Union Bank, that they had sent him such a bill. Is this sufficient evidence of loss, under our law ? See Civil Code, art. 2258. There was no advertisement as required by law, and no security offered.

The court below erred, in giving interest from 9 December, 1841. The bill was not protested, and there is no evidence of any demand of payment at the date when it became due. Interest can only be claimed from judicial demand, to wit, from 21st November, 1843.

BULLARD, J. The plaintiffs allege in their petition, that about the 6th of May, 1841, one A. T. Bowie, drew a bill of exchange on J. H. Leverich & Co. in favor of Daniel Vertner, or order, for fourteen hundred dollars, payable seven months after date, which bill was transferred by Vertner to them before its maturity, and remitted to the Union Bank for collection; but that the same was lost, and, upon application by their agents, the said Leverich & Co. assumed and promised to pay the same out of the proceeds of property of the drawer in their hands, whereby they became

liable as acceptors for the said amount, when the amount should be realized out of property of the drawer, which was subsequently done; and that they have failed to pay the same, though demanded.

The defendant, James H. Leverich, in answer to interrogatories on facts and articles, admits, that he was advised by Bowie, that he had drawn a bill on J. H. Leverich & Co. and requested them to pay it, but such advice did not come to hand till several months after drawing the bill; that, about the 10th of February, 1842, he received a letter from Bowie informing him that he was about to ship cotton to his house, and directing them to pay the bill in question. This letter he exhibited to Major Tilford and Mr. Frey, and acting as the agent of Bowie, he did promise to pay the said bill out of the proceeds of said cotton, to be shipped as stated in the letter. That the cotton arrived about the 21st of February, 1842, and the owner, Bowie, came with it, and countermanded the order given by his previous letter; that on the day of his arrival, he, Leverich, called on Major Tilford, and informed him, that Bowie had directed him not to pay the draft, and at the same time told him, that Bowie was in New Orleans, and that he, Major Tilford, had better see him, and arrange it between themselves, and at the same time told Major Tilford that J. H. Leverich & Co. would not pay the draft. Major Tilford, at that time, lodged at the St. Charles Hotel, as well as Bowie, and he, Leverich, apprised him of the fact, and they both remained in New Orleans several days afterwards. Major Tilford was president of the Northern Bank of Kentucky, and was their agent. He further admits, that the cotton shipped was sufficient to pay the draft; but he paid the proceeds of the same to Bowie, or his order.

The above statement is substantially corroborated by the testimony of Frey.

The promise to pay the bill out of the proceeds of cotton which should be received, was a conditional acceptance of the bill of exchange, and that acceptance became absolute on the receipt of a sufficient amount by the defendants, unless they were discharged by the notice given by Leverich to Tilford, as above stated. It cannot be admitted that a drawer can countermand a draft

accepted, so as to discharge the acceptor, without the consent of the holder. Leverich ought not to have received the cotton on consignment, if he was not willing to pay the draft out of the proceeds. The order of Bowie could not release him from that obligation. But it is said, that the president of the bank, who was at the same time its agent, was notified of this new order of Bowie not to pay his draft. This is true, but it cannot be fairly inferred that he, by his silence or inaction, assented to the release of Leverich from his conditional obligation ; because, although he was the president of the bank and agent at the same time, it does not appear that he had authority from the corporation to release Leverich from his contract ; and certainly, without such consent, either express or implied, he could not rid himself of his obligation. No such consent in our opinion is shown.

But the appellants contend, that that there is no evidence of the transfer of the bill, and that the signature of Vertner, the payee, must be proved before a recovery can be had. A witness testifies that Vertner admitted that he had transferred the bill to the plaintiffs. The circumstances of the case are peculiar. The bill never came to hand. The acceptance was given with a knowledge of that fact. The defendants are not, therefore, parties to the bill by a written acceptance, and consequently run no risk of its being presented hereafter ; nor is it possible to prove the endorsement in the ordinary mode. The defendants treated with the Bank of Kentucky as the holders, and, under these circumstances, slight evidence of the title of the plaintiffs ought to suffice. The acknowledgment of the drawee, that he had transferred the note, appears to us sufficient, and not liable to any objection. It is not hearsay, but rather an admission of a party to a bill, and would, perhaps, not be good evidence, because secondary, if the bill itself could be produced on the trial. The declaration of Vertner would prevent him from ever recovering the amount of the bill of exchange as holder.

Interest was allowed by the judgment, from the 9th December, 1841. In this, we think, there was error, as the draft was not protested. It should have been given only from judicial demand.

The judgment of the District Court is therefore reversed ; and and it is further ordered and decreed, that the plaintiff recover of

James H. Leverich & Co., fourteen hundred dollars, with five per cent. interest from the 21st of February, 1843, the day of the judicial demand, with costs in the District Court, those of the appeal to be paid by the appellees.